1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

MARY M. CARNEY,

Plaintiff,

v.

CASE NO. C21-415 MJP

ORDER GRANTING MOTION TO
DISMISS

13

14

15

16

STATE OF WASHINGTON;
WASHINGTON STATE PARKS AND
RECREATION COMMISSION; and
SWINOMISH INDIAN TRIBAL
COMMUNITY,

Defendants.

17

18     This matter is before the Court on Defendant Swinomish Indian Tribal Community's

19   motion to dismiss.  (Dkt. No. 10.)  Having considered the parties' briefs, supporting declarations,

20   and supplemental authority, (Dkt. Nos. 10, 11, 12, 16, 17, 23, 24, 25, 28, 29, 30, 35), the Court

21   GRANTS the motion and ORDERS that this proceeding is DISMISSED.

22                                                **Background**

23     This is a property dispute over a small strip of land on the Swinomish Indian Reservation

24   between Kiket Island and Fidalgo Island in Skagit County.  (Dkt. No. 1, Attach. 2, "Amended

ORDER GRANTING MOTION TO DISMISS - 1

1   Complaint.")  According to Plaintiff Mary Carney, Defendants, while working on a restoration

2   project on adjacent lands, trespassed on her property, temporarily interfered with an easement

3   appurtenant to her property, and caused parts of her property to be inundated at extreme high

4   tides or during significant storm events.  (Id. at 5–6.)  She seeks damages, injunctive relief, and

5   to quiet title to her property.  (Id. at 8–13.)  The most salient facts here relate to the ownership of,

6   and interest in, three categories of property at issue, all of which are on the Swinomish

7   Reservation: Plaintiff's property, the lands that make up Kukutali Preserve, and the tidelands.

8   Additional background is contained in the Court's order denying Plaintiff's motion to remand.

9   (See Dkt. No. 36.)

10          Ms. Carney owns waterfront property on the Reservation.  (Am. Compl. at 1–2.)  Her

11   property is alienated fee land derived from a federal patent.  (Dkt. No. 25, Declaration of Jennifer

12   A. MacLean ("MacLean Decl."), Exs. C, D.)  Kukutali Preserve is adjacent to Ms. Carney's

13   property, directly to the north (on Fidalgo Island) and west (on Kiket Island).  (Am. Compl. at 2.)

14   The Preserve was created in 2010 when Washington State and the Tribe purchased, as tenants in

15   common, alienated fee land within the Reservation that had passed out of the Tribe.  (MacLean

16   Decl., Ex. I.)  The Tribe transferred its undivided fifty-percent share in the Preserve lands to the

17   United States to hold in trust.  (See Dkt. No. 12, Declaration of Emily Haley ("Haley Decl."),

18   Exs. 10, 12.)  As a result, the Preserve lands are owned by Washington State and the United

19   States, in fifty-percent shares as tenants in common.  The Preserve is co-managed by the

20   Washington State Parks and Recreation Commission and the Tribe.  (MacLean Decl., Ex. I.)

21          The tidelands surround Kiket Island and Fidalgo Island.  They form the southwestern

22   boundary of Plaintiff's property and converge on the strip of land at issue, between Kiket Island

23   and Fidalgo Island.  Plaintiff's property expressly excludes tidelands.  (Am. Compl. at 2.)  The

24

ORDER GRANTING MOTION TO DISMISS - 2

1   Tribe's right to the tidelands was recognized by the Treaty of Point Elliott in 1855, 12 Stat. 927,

2   and an executive order issued by President Ulysses S. Grant, in 1873.  (See Haley Decl., Ex. 1.)

3   The Tribe's claim to the tidelands extends from extreme low tide to the mean high-water mark,

4   which can change through natural occurrences.  See State v. Edwards, 188 Wash. 467, 472

5   (1936) (recognizing Swinomish Tribe's claim extends to extreme low tide); United States v.

6   Milner, 583 F.3d 1174, 1181 (9th Cir. 2009) (federal law defines upper boundary of tidelands as

7   mean high-water mark).  The United States owns the tidelands in trust for the Tribe.  (Haley

8   Decl., Exs. 2–8 (memoranda of the Office of the Regional Solicitor of the United States

9   Department of Interior); see also Ex. 9 (Swinomish Tribal Code, Title 23, Ch. 1).)

10        The controversy, in short, centers on Defendants' restoration project on Kiket Island

11   Road.  Defendants removed portions of the road they contend were artificially filled tidelands.

12   (Dkt. No. 1 at 3; Am. Compl. at 7, 8.)  Ms. Carney seeks to quiet title to her property and to

13   enforce her rights under an easement which runs along Kiket Island Road, including by ordering

14   Defendants to restore the road and maintain it in perpetuity.  (Am. Compl. at 9–12.)  The dispute

15   necessarily requires determining the location of the tidelands.  (See Dkt. No. 36 at 7.)

16                                      **Discussion**

17        The Tribe moves to dismiss on three grounds: (1) under FRCP 12(b)(1) for lack of

18   jurisdiction because of tribal sovereign immunity; (2) under FRCP 12(b)(7) and 19 because the

19   Tribe and the United States are required parties who cannot be joined; and (3) under FRCP

20   12(b)(6) for failure to state a cause of action.  The Court finds that the Tribe has sovereign

21   immunity and grants the Tribe's motion to dismiss under FRCP 12(b)(1) with respect to all

22   claims against it for lack of subject-matter jurisdiction.  The Court also finds the Tribe and the

23   United States are required parties and Plaintiff's claims cannot proceed in their absence.

24

ORDER GRANTING MOTION TO DISMISS - 3

1    Therefore, the Court grants the Tribe's motion under FRCP 12(b)(7) and 19 and orders that this

2    proceeding is dismissed.  The Court need not reach the remainder of the Tribe's motion.

3        **A.        Tribal Sovereign Immunity**

4        " 'Suits against Indian tribes are . . . barred by sovereign immunity absent a clear waiver

5    by the tribe or congressional abrogation.' "  Deschutes River Alliance v. Portland Gen. Elec. Co.,

6    1 F.4th 1153, 1159 (9th Cir. 2021) (quoting Okla. Tax Comm'n v. Citizen Band Potawatomi

7    Indian Tribe of Okla., 498 U.S. 505, 509 (1991).  Tribal sovereign immunity applies to actions

8    for injunctive and declaratory relief.  Imperial Granite Co. v. Pala Band of Mission Indians, 940

9    F.2d 1269, 1271 (9th Cir. 1991).  It also applies to tort claims.  Arizona v. Tohono O'odham

10   Nation, 818 F.3d 549, 563 n.8 (9th Cir. 2016).  Tribal sovereignty is "quasi-jurisdictional," in

11   that it can be waived.  Pistor v. Garcia, 791 F.3d 1104, 1110 (9th Cir. 2015).  Waiver and

12   Congressional abrogation are not in question.  The issue is whether an exception to sovereign

13   immunity involving immutable property applies to tribal sovereign immunity and, if so, whether

14   it should apply here.  If the exception does not apply, the claims against the Tribe must be

15   dismissed.  Michigan v. Bay Mills Indian Cmty., 572 U.S. 782, 791 (2014).

16       Under the immutable-property exception, sovereign immunity does not apply when a

17   sovereign acquires physical property in foreign territory because the sovereign acts as a private

18   individual or entity.  See Upper Skagit Indian Tribe v. Lundgren, 138 S. Ct. 1649, 1653 (2018)

19   (citing Schooner Exchange v. McFaddon, 7 Cranch 116, 145 (1812)).  This exception has been

20   applied to states.  See State of Ga. v. City of Chattanooga, 264 U.S. 472, 481 (1924).  It has also

21   been incorporated into the Foreign Sovereign Immunity Act with respect to foreign governments.

22   See 28 U.S.C. § 1605(a)(4); City of New York v. Permanent Mission of India to the United

23   Nations, 446 F.3d 365 (2d Cir. 2006), aff'd and remanded, 551 U.S. 193 (2007).  The Supreme

24

ORDER GRANTING MOTION TO DISMISS - 4

1    Court has not decided whether this exception applies to tribal sovereign immunity. Upper Skagit

2    Indian Tribe v. Lundgren, 138 S. Ct. 1649 (2018).

3        Even if it applies to tribal sovereign immunity, the immutable-property exception would

4    not apply to the facts of this case.  All the disputed lands—Plaintiff's property, the Preserve, the

5    easement, and the tidelands—are within the Tribe's original reservation.  The Tribe's claims are

6    not to property in the territory of another sovereign.  The Supreme Court has not questioned

7    whether tribal sovereign immunity would apply to Indian trust property within a tribe's original

8    reservation.  The only issue in Upper Skagit Indian Tribe was whether sovereign immunity may

9    not apply to property outside the reservation purchased by a tribe.  See id. at 1654; see also id at

10    1655 (Roberts, C.J., concurring) ("There should be a means of resolving a mundane dispute over

11    property ownership, even when one of the parties to the dispute—involving non-trust, non-

12    reservation land—is an Indian tribe.").  The Second Circuit has reached the same result when

13    considering competing claims to a parcel of land that was undisputedly within a reservation.

14    Oneida Indian Nation v. Phillips, 981 F.3d 157, 170 (2d Cir. 2020), cert. denied, No. 20-1675,

15    2021 WL 2637993 (U.S. June 28, 2021).

16        The fact that Washington State co-owns the Preserve does not affect the analysis.  See

17    Deschutes River Alliance v. Portland Gen. Elec. Co., 1 F.4th 1153 (9th Cir. 2021) (tribe that co-

18    owned, with utility company, hydroelectric project located partly within reservation had

19    sovereign immunity).  In any case, there is no question that the Tribe has sovereign immunity for

20    any claims against it regarding the tidelands, its rights to which have never been relinquished.

21    The Amended Complaint implicates tribal sovereign immunity on its face: Plaintiff seeks to

22    quiet title to, and to enforce an easement over, property the Tribe claims as tidelands and to other

23    lands within the Tribe's original reservation held in trust for the Tribe.  Because the Tribe has

24

1   sovereign immunity, all claims against it are dismissed for lack of subject-matter jurisdiction.

2   See Deschutes River Alliance, 1 F.4th at 1163.

3   **B.      Required Parties**

4       The issue now is whether this suit may proceed without the Tribe or the United States,

5   which was not named as a party.  Because joinder is not feasible for either due to sovereign

6   immunity, this inquiry involves deciding, under Rule 19: (1) whether the Tribe and the United

7   States are required parties; and (2) whether the case can fairly proceed in their absence.  Jamul

8   Action Comm. v. Simermeyer, 974 F.3d 984, 996 (9th Cir. 2020).

9       A person is a required party and must be joined if:

10      (A) in that person's absence, the court cannot accord complete relief among existing
        parties; or

11

12      (B) that person claims an interest relating to the subject of the action and is so situated
        that disposing of the action in the person's absence may:

13          (i) as a practical matter impair or impede the person's ability to protect the
            interest; or

14

15          (ii) leave an existing party subject to a substantial risk of incurring double,
            multiple, or otherwise inconsistent obligations because of the interest.

16  Fed. R. Civ. P. 19(a)(1).

17      Both the Tribe and the United States are required parties.  All parties claiming an interest

18  in the property in a quiet-title action are required parties, and the Ninth Circuit has applied this

19  rule to Indian trust land.  See Lyon v. Gila River Indian Cmty., 626 F.3d 1059, 1069 (9th Cir.

20  2010).  It is undisputed that the United States owns, in trust for the Tribe, both the tidelands at

21  the edge of the Reservation and the Tribe's undivided one-half interest in the Preserve lands.

22  The Court cannot accord complete relief between Plaintiff and the State Defendants because the

23  State does not have any rights to the tidelands, the determination of which is central to Plaintiff's

24  claim to quiet title and the injunctive relief she seeks to enforce her rights under an easement.

1   For the same reason, resolving Plaintiff's claims without the Tribe or the United States may

2   impede the ability of either to protect the Tribe's rights to the tidelands.

3          In deciding whether the case can proceed without the Tribe or the United States, the

4   Court considers the following factors:

5          (1) the extent to which a judgment rendered in the person's absence might prejudice that
           person or the existing parties;

6          (2) the extent to which any prejudice could be lessened or avoided by:

7                  (A) protective provisions in the judgment;

8                  (B) shaping the relief; or

9                  (C) other measures;

10         (3) whether a judgment rendered in the person's absence would be adequate; and

11         (4) whether the plaintiff would have an adequate remedy if the action were dismissed for
           nonjoinder.

12  Fed. R. Civ. P. 19(b).  However, "the balancing of equitable factors under Rule 19(b) almost

13  always favors dismissal when a tribe cannot be joined due to tribal sovereign immunity." Jamul

14  Action Comm. v. Simermeyer, 974 F.3d 984, 998 (9th Cir. 2020).  "There is a 'wall of circuit

15  authority' in favor of dismissing actions in which a necessary party cannot be joined due to tribal

16  sovereign immunity—'virtually all the cases to consider the question appear to dismiss under

17  Rule 19, regardless of whether [an alternate] remedy is available, if the absent parties are Indian

18  tribes invested with sovereign immunity.' " Dine Citizens Against Ruining Our Env't v. Bureau

19  of Indian Affs., 932 F.3d 843, 857 (9th Cir. 2019), cert. denied, 141 S. Ct. 161 (2020) (quoting

20  White v. Univ. of California, 765 F.3d 1010, 1028 (9th Cir. 2014) (collecting cases)).

21         There is no reason to depart from this authority here.  The Tribe would be prejudiced by a

22  judgment entered in its absence because the relief Plaintiff seeks concerns the Tribe's rights to

23  the tidelands, and the State cannot adequately represent the Tribe's interests.  (See Dkt. No. 16 at

24

ORDER GRANTING MOTION TO DISMISS - 7

1  7.)  The State would also be prejudiced because it cannot make any changes to Kiket Island Road

2  without consulting the Tribe.  (Am. Compl., Ex. E at 62.)  There is no way to reduce that

3  prejudice because Plaintiff's claims all hinge on determining the location of the tidelands.  In

4  addition, because the United States owns the Tribe's lands in trust, Plaintiff's boundary disputes

5  are between her and the United States.  Any judgment would be inadequate because the United

6  States cannot be bound by any decision to which it is not a party.  See Carlson v. Tulalip Tribes

7  of Washington, 510 F.2d 1337, 1339 (9th Cir. 1975).  Proceeding without the Tribe or the United

8  States also raises a strong possibility of multiple and conflicting judgments, because the Tribe

9  and the United States have a strong interest in protecting their interests in the Tidelands and

10  Preserve lands and may seek relief in a separate proceeding.  The lack of an effective remedy

11  does not prevent dismissal here, although Plaintiff may seek a determination of the shoreward

12  boundary of her property under the Swinomish Tribal Code.  (See Haley Decl. Ex. 9 (Swinomish

13  Tribal Code § 23-01.200).)

14                                                              ***

15          The Tribe has sovereign immunity, so Plaintiff's claims against it are dismissed under

16  FRCP 12(b)(1).  In addition, because the Tribe and the United States are necessary parties that

17  cannot be joined, the proceeding cannot proceed without them in equity and good conscience and

18  is therefore dismissed under FRCP 12(b)(6) and 19.

19          The clerk is ordered to provide copies of this order to all counsel.

20          Dated August 9, 2021.

21

22  _____
    Marsha J. Pechman

23  United States District Judge

24

ORDER GRANTING MOTION TO DISMISS - 8